First of all, my name is Nancy Hinchcliffe, as you know, and I am an attorney from Phoenix, Arizona, and I do represent Mr. Stowbunenko Sytschenko in this case. As you know, there have been three issues raised, and I first would like to address a couple of points pertaining to issue number one. I don't intend to address anything reference issue number two, and then briefly at the end of the argument, I'd like to make a couple of comments on argument number three, if I may. First of all, I want to acknowledge some things that I did not acknowledge in the reply brief and admit to the Court that I think that the argument is probably hanging, hopefully by more than a thread, but that this is a very – I'm going to characterize it as a novel argument. First of all, in the government's brief – I'm sorry. I should have realized that. Thank you. In the government's brief, the government's brief indicates that if a federal statute is of general applicability, then it's considered to apply to Indians. And in this case, I think that the gist of the government's argument is because the immigration laws – and, of course, my client was convicted of violating the immigration laws – that it was intended, even in Congress's silence, to apply to Indians. And, of course, my client claimed, and his claim is, that he's basically a naturalized member of this particular group. In light of that, that does weaken the argument that counsel made to the Court. I wanted the Court to know where I was coming from when the argument was originally made, and that is the McCandless case, which was cited in the brief, and also Aikens v. Saxby. In those cases, Mr. McCandless, if you'll recall, was an Iroquois Indian. He was a Canadian Indian, and for many years he had crossed the Canadian border because the United States allowed this to occur. The United States basically recognized, if you will, an aboriginal right of free passage. Was it aboriginal, or was it a treaty right? Well, that's a good question, and I would argue that it was both. Well, if you have a treaty, you don't need to rely on an aboriginal right. You just rely on the treaty. Well, there was a treaty in that case, and at first it was the Jay Treaty. See, if your tribe had a treaty that said that its members could travel freely back and forth across the Mexican border, I would have to think long and hard about this case. I understand, Judge. What you're arguing is an aboriginal right of the Pembina, a band of Pembina, who live in North Dakota and may at one time have had an aboriginal right to cross into Canada and back, but I question that they had an aboriginal right to cross into Mexico and back. Well, by explanation of why I thought it might apply, I basically was going on the information that was contained in these two old cases, which I felt justified the notion that when the original Immigration and Nationality Act of 1924 was passed, that Congress intended that, in fact, that not apply to Indians. Because in those days, and you can find this information in the cases, in those days when Congress passed a statute, it, in fact, would not apply to Indians unless they specifically said. So that was the basis. But in any event, there's that that I wanted to bring to the Court's attention. Also, there's a 28J letter, and I don't want to beat a dead horse on this, on this particular issue, but in terms of the 28J letter that has been submitted on Friday, I would just point out to the Court that the government in its arguments in the district court never claimed that either my client or the two Mexican citizens were not Indians because they were not Indians by blood, nor did they make the argument that an Indian tribe could not naturalize members. And that seems to be the argument now that's being made in terms of this letter is because there was not a blood relationship here in terms of the case that's cited in the letter, that, in fact, that argument is now being presented. And I would argue it wasn't presented in the district court, and really it wasn't presented in that fashion until this 28J letter appeared. As you know, there is one other issue, and it's issue number three. And, again, the important thing about issue number three is that the mistake be corrected however that comes about. I happen to believe that what happened here was a conviction occurred in March of 2007, and the defendant was sentenced in May of 2007, so two months went by. I think the court simply forgot that it was a misdemeanor instead of a felony. I think the court relied upon the pre-sentence report, which called it a felony. I think that no correction was made by either defense counsel or the prosecutor. I'm sure it was not intentional. It was an oversight on their part. Does the government agree with you on that? I think so. Well, do they concede that? Yes, I think they concede that. I think the question is how are we going to correct it. Okay. Can't you simply remand the direction of the case? Well, and that's a possibility. Although I think it could be done any time, really. Here's my point, and this is my only point. Does there have to be – I ask that the matter be remanded for resentencing. And I would propose that in a case such as this, I don't think the sentence is going to be any different whatsoever. You would want to remand for correction of the judgment, not for resentencing. Yes. I don't – I think that it can simply be corrected because I don't think other – I don't think it's necessary if the court sees fit. I don't think it's necessary for it to go back to the district court. I think that, you know, in terms of a total resentencing, I think if it can be corrected by some sort of document, that's what I would prefer. Thank you. Thank you. May it please the Court. My name is John Lopez. I'm an assistant U.S. attorney in the District of Arizona, and I represent the government in the appeal in this matter. I'd like to start out by expressing the government's concurrence with Judge Canby's opening sentiment here. The defendant's argument fails for many reasons. First and foremost, there is no treaty right for the Pembina Indians to make border crossings between the United States and Mexico. There is no evidence in the record, including the voluminous documentary evidence concerning the history of the Pembina tribe presented by the defendant at trial, that the Pembina Indians have any connection whatsoever to the southern border. There's no treaty rights to cross over between the United States and Mexico, and because there is no geographic affiliation between the Pembinas and the southern border of the United States, there simply can be no aboriginal rights. This Court's case law and other courts' case law makes clear that when aboriginal rights, assuming that they exist, are restricted to historic homelands. In this case, if there were to be any issue, it would lie strictly with respect to purported Pembina Indians' rights to travel freely between Canada and the United States. There are a number of other arguments that are made. I think that it's clear that the defendant's claim to Pembina status itself is suspect. To summarize, if the court were to accept the defendant's reasoning, the scope of the Pembina tribe is limited strictly to the number of human beings who have access to a computer and can download documents and place their signature upon it, and the government submits that that would be indeed an absurd result, that an individual who could simply download a document and then state a claim to status in an Indian tribe without any lineal ancestry could therefore � We don't really need to reach that issue to resolve this case, do we? I don't believe so, Your Honor. I don't have anything further to add unless the court has additional questions of me. Just on the last point about correcting the judgment. I mean, just procedurally, do we demand to correct, or can it just be corrected by the district judge anyway? Your Honor, I believe under Rule 36 it can just be corrected by the district judge. Whatever the intent of the district judge to have any that is still open to the courts instead of the district judges. If you give us the design from yesterday or tomorrow, we can correct them any way that you like. I just don't think under Rule 36 we can proceed with judging Connell. We may not get to that until the conclusion of December, but it will still be subject to the legal problems that we are facing. Yes. I would disagree with the government's reading of Rule 36. The remand should be limited strictly to correcting the judgment and not to conducting a full resentencing. Okay. Thank you. Thank you, counsel. Do you have anything further? All right. United States v. Stavrenko is submitted.
judges: Canby, Wardlaw, Trager